BENJAMIN B. WAGNER
United States Attorney
DAWRENCE W. RICE, JR.
STANLEY A. BOONE
Assistant U.S. Attorneys
CLIFFORD I. RONES
Senior Trial Attorney
Counterespionage Section
United States Department of Justice
Suite 4401, Federal Courthouse
2500 Tulare Street
Fresno, California 93721
Telephone:  (559) 497-4000

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>   v.<br><br>AMEN AHMED ALI,<br><br>    Defendant. | 1:06-cr-00292 LJO<br><br><br>PLEA AGREEMENT |

## I.

## INTRODUCTION

**A.  Scope of Agreement:**  The Superseding Indictment in this case charges the defendant with violating 18 U.S.C. §§ 371, 951 & 641, and 22 U.S.C. § 2778 - Conspiracy to Act as an Illegal Agent of a Foreign Government, Unlawfully Export Defense Articles, and Possess Stolen Government Property; 18 U.S.C. § 951(a) - Acting as an Illegal Agent of a Foreign Government; 22 U.S.C. § 2778 - Attempted Unlawful Export of Defense Articles; 18 U.S.C. § 793(g) - Conspiracy to Gather, Possess and Transmit Defense Information; and, 18 U.S.C. § 793(b) - Gathering Defense Information.  This document contains the complete

1

Plea Agreement between the United States Attorney's Office for the Eastern District of California and the defendant regarding this case. This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.   Court Not a Party:**   The Court is not a party to this Plea Agreement.  Sentencing is a matter solely within the discretion of the Court, the Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement.  If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this Agreement.  The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

The defendant understands that the United States Probation Office is also not a party to this agreement and will conduct an independent investigation of the defendant's activities and his background and prepare a report which it will submit to the Court as its own sentencing recommendation.  In addition, the government will fully appraise the Probation Office, as well as the Court, of the full and true nature, scope and extent of the defendant's criminal activities concerning the charges to which the defendant is entering a plea of guilty, including activities which may not have been charged in the Superseding Indictment, and which may or will be

2

1    dismissed. Furthermore, the government will fully appraise the
2    Probation Office, as well as the Court, of the full and true nature,
3    scope and extent of any and all relevant conduct.

4         **C. Nature, Elements and Possible Defenses**:  The defendant has
5    read the charges against him contained in the Superseding Indictment
6    in this case, and the charges have been fully explained to him by his
7    counsel.  Further, the defendant fully understands the nature and
8    elements of the crimes with which he has been charged, together with
9    the possible defenses thereto, and has discussed them with counsel.

10        The defendant understands that in order to prove him guilty of
11   the charge of Conspiracy to Act as an Illegal Agent of a Foreign
12   Government, Unlawfully Export Defense Articles, and Possess Stolen
13   Government Property, in violation of 18 U.S.C. § 371, as alleged in
14   the Superseding Indictment, the government must prove each of the
15   following elements beyond a reasonable doubt:

16        First, beginning on or about 1987, and continuing to on or about
17   September 7, 2006, there was an agreement between two or more persons
18   to commit at least one crime as charged in the Superseding
19   Indictment;

20        Second, the defendant became a member of the conspiracy knowing
21   of at least one of its objects and intending to help accomplish it;
22   and,

23        Third, one of the members of the conspiracy performed at least
24   one overt act for the purpose of carrying out the conspiracy.

25        The elements of the crime of acting as an illegal agent of a
26   foreign government in violation of 18, U.S.C. § 951 are:

27        First, the defendant acted as an agent of a foreign government,
28   in this case the government of Yemen;

3

1    Second, the defendant failed to notify the Attorney General that
2  he would be acting as an agent of the government of Yemen in the
3  United States prior to so acting;

4    Third, the defendant acted knowingly, and knew that he had not
5  provided prior notification to the Attorney General; and,

6    Fourth, the defendant acted, at least in part, as an agent for
7  the government of Yemen in the Eastern District of California.

8    The elements of the crime of unlawfully exporting defense
9  articles in violation of 22 U.S.C. § 2778 are:

10    First, the defendant exported, attempted to export or caused to
11  be exported from the United States to a foreign country an article on
12  the United States Munitions List;

13    Second, the defendant did not obtain a license or written
14  approval for the export from the United States Department of State;
15  and,

16    Third, the defendant did such acts willfully.

17    The elements of the crime of possessing stolen government
18  property in violation of 18 U.S.C. § 641 are:

19    First, the defendant knowingly received property of value;

20    Second, the property belonged to the United States;

21    Third, the defendant knew that the property had been stolen from
22  the United States;

23    Fourth, the defendant intended to possess the property for his
24  own use or gain; and,

25    Fifth, the value of the property was more than $1,000.

26                                      **II.**

27                        **DEFENDANT'S OBLIGATIONS**

28    **A.   Guilty Plea:**  The defendant will plead guilty to Count One

4

1  of the Superseding Indictment charging him with Conspiracy to Act as
2  an Illegal Agent of a Foreign Government, Unlawfully Export Defense
3  Articles, and Possess Stolen Government Property, in violation of 18
4  U.S.C. §§ 371, 951 & 641, and 22 U.S.C. § 2778.  The defendant agrees
5  that he is in fact guilty of this charge and that the facts set forth
6  in the Factual Basis attached hereto as Exhibit A are accurate.

7  **B.   Agreement to Sentence:** The defendant stipulates and agrees
8  to a sentence of the statutory maximum on Count One of sixty (60)
9  months imprisonment, in exchange for the government's agreement to
10  request that the Court dismiss, at the time of sentencing as to him
11  only, the remaining counts of the Superseding Indictment which have
12  higher statutory maximum sentences and advisory sentencing guideline
13  ranges.

14                              **III.**

15                     **THE GOVERNMENT'S OBLIGATIONS**

16  **A.   Agreement to Sentence:** The government stipulates and agrees
17  to recommend a sentence of the statutory maximum on Count One of
18  sixty (60) months imprisonment, and agrees to request that the Court
19  dismiss, at the time of sentencing as to this defendant only, the
20  remaining counts of the Superseding Indictment which have higher
21  statutory maximum sentences and advisory sentencing guideline ranges.

22                              **IV.**

23                        **MAXIMUM SENTENCE**

24  **A.   Maximum Penalty:**  The maximum potential sentence which the
25  Court could impose in this case is five (5) years imprisonment, a
26  period of supervised release of three years, a fine of $250,000, and
27  a special assessment of $100.
28  ///

The following is the minimum and maximum potential sentence in this case for Conspiracy to Act as Unregistered Agent of a Foreign Government, Unlawfully Export Defense Articles, and Possess Stolen Government Property, in violation of 18 U.S.C. §§ 371, 951 & 641, and 22 U.S.C. § 2778:

    (a)   Imprisonment.

         Mandatory Minimum:  None.

         Maximum: Five (5) years.

    (b)   Fine.

         Mandatory Minimum:  None.

         Maximum:  Two Hundred Fifty Thousand Dollars ($250,000).

    (c)   Both such fine and imprisonment.

    (d)   Term of Supervised Release.

         Maximum:  Three (3) years.

         (Should the defendant violate any of the terms of his supervised release, he can be returned to prison for the period of supervised release actually imposed by the court or two years, whichever is less.)

    (e) Penalty Assessment.

         Mandatory: One Hundred Dollars ($100).

**V.**

**SENTENCING DETERMINATION**

**A.  Statutory Authority:**  The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by United States v. Booker and United States v. Fanfan, 2005

WL 50108 (Jan. 12, 2005)), and must take them into account when determining a final sentence.  Defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines.  Defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines.  Defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

## VI.

### WAIVERS

**A.   Waiver of Constitutional Rights**:  The defendant understands that by pleading guilty he is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to confront and cross-examine witnesses against him; and, (e) not to be compelled to incriminate himself.

**B.   Waiver of Appeal and Collateral Attack:** The defendant understands that the law gives him a right to appeal his conviction and sentence.  He agrees as part of his plea, however, to give up this right as long as his sentence is consistent with the agreement set forth above.

///

The defendant also gives up any right he may have to bring a post-conviction attack on his conviction or his sentence.  He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence.

If the defendant's conviction on the charge to which he is pleading guilty is ever vacated at the defendant's request, or his sentence is ever reduced solely at his request over the government's objection, the government shall have the right to prosecute the defendant on the charge to which he pleaded guilty and any charges which were dismissed or not filed.  The decision to pursue this option is solely in the discretion of the United States Attorney's Office.  By signing this agreement, the defendant agrees to waive any objections, motions, and defenses he might have to the government's decision.  In particular, he agrees not to raise any objections based on the passage of time with respect to such charges including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

**C.   Waiver of Attorneys' Fees and Costs:** The defendant agrees to waive all rights under the Hyde Amendment, Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations.

## VII.

## ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition

exist unless it is committed to writing and signed by the defendant,

counsel for the defendant, and counsel for the United States.

### VIII.

### APPROVALS AND SIGNATURES

**A.   Defense Counsel:**  I have read this Plea Agreement and have

discussed it fully with my client.  The Plea Agreement accurately and

completely sets forth the entirety of the agreement.  I concur

in my client's decision to plead guilty as set forth in this

Agreement.

DATED: September 7, 2010

_____
ANTHONY P. CAPOZZI
Attorney at Law
Counsel for Defendant

DATED: September 20, 2010

_____
DAVID A. TORRES
Attorney at Law
Counsel for Defendant


**B.   Defendant:**  I have read this Plea Agreement and carefully

reviewed every part of it with my attorney.  I understand it, and I

voluntarily agree to it.  Further, I have consulted with my attorney

and fully understand my rights with respect to the provisions of the

Sentencing Guidelines which may apply to my case.  No other promises

or inducements have been made to me, other than those contained in

this Agreement.  In addition, no one has threatened or forced me in

any way to enter into this Plea Agreement.  Finally, I am satisfied

with the representation of my attorney in this case.

DATED: September 20, 2010

_____
AMEN AHMED ALI
Defendant

9

**C.   Attorneys for United States:**

        We accept and agree to this Plea Agreement on behalf of the government.

DATED: ~~September~~ October 7, 2010           BENJAMIN B. WAGNER
                                               United States Attorney

                                               By ~~DAWRENCE~~ LAWRENCE W. RICE, JR.
                                               Assistant U.S. Attorney


DATED: ~~September~~ October 7, 2010           By
                                                 CLIFFORD I. RONES
                                               Senior Trial Attorney
                                               Counterespionage Section
                                               United States Department of Justice

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "A"**

**Factual Basis for Plea**

Defendant Amen Ahmed Ali was originally a native and citizen of the Republic of Yemen, a sovereign nation located outside the territorial boundaries of the United States.  On or about April 23, 1970, the defendant became a permanent resident of the United States.  On or about September 1, 1976, the defendant became a naturalized citizen of the United States.  Subsequent to that date, the defendant continued to possess identification documents issued by the Republic of Yemen which identified him as a citizen and representative of that country.

At no time was the defendant a duly accredited diplomatic or consular officer of a foreign government recognized by the U.S. Department of State, an officially and publicly acknowledged and sponsored official or representative of a foreign government, or an officially and publicly acknowledged and sponsored member of the staff of, or employee of, any such officer, official, or representative of a foreign government.

Beginning on or about 1987, and continuing to on or about September 7, 2006, in Kern County, in the State and Eastern District of California, and elsewhere, defendant Amen Ahmed Ali did unlawfully combine, conspire, confederate, and agree with co-defendants Ibrahim A. Omer and Mohamed Al-Rahimi, and with others, to knowingly act in the United States as an agent of the Republic of Yemen without giving prior notification to the Attorney General of the United States, to knowingly and willfully attempt to export, export and cause to be exported from the United States to the Republic of Yemen items

1

designated as defense articles on the United States Munitions List
without first obtaining a license or other written authorization for
such export from the United States Department of State, Directorate
of Defense Trade Controls, and to receive and retain property of the
United States knowing it to have been stolen with the intent to
convert it to his own use and gain.

       During the conspiracy, defendant Amen Ahmed Ali received
instructions from and conducted activities on behalf of the Armed
Forces Department of the Republic of Yemen, Department of Military
Transport.   The defendant organized, was a member of, and became
president of National Association of Yemeni Immigrants chapter
located in Kern County.   A representative of the government of Yemen
directed the election at which the defendant was elected president.
The National Association of Yemeni Immigrants was an organization
organized by, and operated under the supervision of, the government
of the Republic of Yemen.   The defendant used his position to perform
duties on behalf of and at the direction of the government of the
Republic of Yemen, including issuing official documents.   For
instance, on or about October 15, 2000, the defendant issued a
document confirming the dissolution of a marriage between two persons
from Yemen residing in the United States.   Also, on or about December
25, 2002, the defendant issued a document ordering the arrest of a
person from Yemen upon the return of that person to Yemen.   And,
between on or about June 27 and July 11, 2006, the defendant was
directed by representatives of the Republic of Yemen to investigate
and resolve a dispute between two persons from Yemen residing in Kern
County.   Pursuant to such directions, the defendant reported his

A.A

findings and actions back to the government of the Republic of Yemen.

Between on or about January 17, 2003, and on or about February 14, 2003, the defendant conspired with co-defendant Ibrahim Omer to cause two vehicles and various defense articles on the United States Munitions List, including six Level III bullet proof vests, two military fragmentation vests, a Class I chemical protective suit, three Class I chemical protective pants, and three Class I chemical protective jackets, to be loaded into a 40 foot shipping container in Bakersfield, California.  Only the two vehicles were listed on the shipping manifest, and one was incorrectly identified.  The container was delivered by truck to the port in Long Beach for shipment.  The container was inspected by a Bureau of Customs and Border Protection Inspector at the port in Long Beach, and the defense articles were found.  The container was scheduled for shipment to Yemen.  Defense articles on the United States Munitions List cannot be lawfully exported without a license from the State Department, Directorate of Defense Trade Controls.  Neither the defendant or co-defendant Omer had an export license for the defense articles.  A search warrant was executed on Omer's business and his computer was seized.  Forensic analysis of the computer revealed that the defendants were aware of the requirement that they needed to have an export license to ship defense articles from the United States to Yemen.

During the course of the continuing investigation, an undercover agent under the direction of the Federal Bureau of Investigation was introduced to the defendant in 2005.  The undercover agent represented that he was in the United States Army and had access to military equipment that he was willing to steal and sell to the

defendant.   The defendant sought to obtain stolen military equipment from the undercover agent.   The defendant also advised the undercover agent that he was interested in acquiring United States defense information.   The defendant attempted to make arrangements to have stolen United States military equipment delivered to himself or his associates outside of the United States.   The defendant instructed the undercover agent to send stolen military equipment to the Republic of Yemen, so it could be sold.

More specifically, on or about October 1, 2005, the defendant filled out a Federal Express waybill intended to be used to ship stolen United States military equipment from the United States to the Republic of Yemen and gave $500 in United States currency to the undercover agent to cover the cost of shipping.   On or about November 20, 2005, pursuant to instructions provided by the defendant, the following "stolen" United States military equipment was shipped and received in the Republic of Yemen, to wit: one pair of night vision goggles, four satellite telephones, and two military laptop computers.   The value of this property exceeded $1,000.   On or about November 22, 2005, co-defendant Mohamed Al-Rahimi left the United States from San Francisco International Airport on a flight to the Republic of Yemen.   On or about December 14, 2005, a telephone call between the defendant and co-defendant Al-Rahimi was intercepted and recorded in which they discussed the disposition of the "stolen" United States military equipment that had been shipped to Yemen.

On or about February 5, 2006, pursuant to instructions provided by the defendant additional "stolen" United States military equipment, to wit: a ballistic vest, a pair of night vision goggles,

1   and satellite telephone, and two military laptop computers, was

2   shipped and eventually received in Yemen.  The value of this property

3   exceeded $1,000.  And, on or about, February 25, 2006, the defendant

4   sent a document by facsimile transmission to a person in the Republic

5   of Yemen which set forth the prices expected to be paid for this

6   "stolen" United States military equipment.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

A-A